## WASHINGTON UNIVERSITY v. UNITED STATES et al.

### No. 13271.

Circuit Court of Appeals, Eighth Circuit.

Aug. 26, 1946.

Richard S. Bull, of St. Louis, Mo., for appellant.

Harry Marselli, Sp. Asst. to the Atty. Gen. (Sewall Key, Acting Asst. Atty. Gen., A. F. Prescott and Paul S. McMahon, Sp. Assts. to the Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for the United States.

James L. Crawford, of Cincinnati, Ohio, and S. D. Flanagan and E. D. Franey, both of St. Louis, Mo., for appellees Frank Wagenblast and others.

Before GARDNER and THOMAS, Circuit Judges, and DUNCAN, District Judge.

DUNCAN, District Judge.

The question for determination on this appeal is whether or not the appellant in its operation of Cupples Station, a freight handling station in St. Louis, Missouri, is an employer as defined by Section 1532 of Title 26 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 1532, and Section 1(3)(a) of Title 49 U.S.C.A. of the Interstate Commerce Act, and therefore liable for the payment of the tax provided by that section. The Commissioner of Internal Revenue held that the appellant was such employer, and liable for the tax. Subsequent to that ruling, the appellant paid the employer's tax for periods ending September 30 and December 31, 1940, and March 31, June 30 and September 30, 1941, and instituted suit for the recovery of the amount paid. The finding and judgment in the lower court was for the appellee United States of America. Appellee Wagenblast and the other intervening appellees are employees of Cupples Station, and because of their seniority rights and retirement benefits involved in this controversy, they were permitted to intervene.

Appellant, Washington University, is a charitable and educational corporation organized under special acts of the Legislature of Missouri. As a part of its endowment, the University owns what is known as "Cupples Block," composed of numerous large commercial and industrial buildings covering the equivalent of approximately four city blocks, and "Cupples Station," (as it will be hereinafter referred to) is a part of Cupples Block. The Station was erected in 1890 to provide centrally located freight station facilities for railroads operating in the St. Louis area, and in 1900 Cupples Block, including Cupples Station, was conveyed to the appellant.

From the time of its construction in 1890 until August 1, 1935, Cupples Station was operated by the Terminal Railroad Association of St. Louis as a public freight station for loading and unloading freight

for and on behalf of the numerous carriers operating in the St. Louis area. The Terminal Railroad Association operated the station as a part of the services rendered by carriers to shippers.

On August 1, 1935, the Terminal Railroad Association on behalf of twenty designated carriers operating in the St. Louis area, entered into an agreement with the University, under the terms of which the University agreed to: " * * * furnish and maintain for the benefit of Carriers all of the equipment and facilities of the character now used at the Station aforesaid, together with railroad tracks, owned and installed by it, light, heat, power, supplies and other essential appurtenances; also the forces to perform such functions and clerical services as are usual and customary in a railroad freight station for the handling of, and the University hereby covenants and agrees to handle for the Carriers, less than carload freight delivered by, or intended for delivery to, the Carriers at the Station, and will unload and load carload freight for the shippers and consignees on such terms as it may see fit to impose, but without any charge whatever to the Carriers for the loading and unloading of carload freight consigned to or from said Station."

Under the terms of the agreement the Terminal Railroad Association was to act as the impartial financial agent or clearing house for the University and the Carriers in collecting and paying moneys due the University. For its services the Terminal Railroad Association agreed to pay to the University the sum of $1,250 per month for the use of the facilities of the station, and the additional amount of .605¢ per ton for handling less-than-carload shipments of freight.

The Station employs from 30 to 50 or 60 people, depending upon the amount of freight to be handled daily. A considerable number of the employees are members of the Brotherhood of Railroad Trainmen, Steamship Clerks, Freight Handlers, Express and Station associations, and receive the same pay as employees employed in other freight stations owned and operated by carriers; the same rules of seniority are applied to the Cupples Station employees as to other freight station employees. By the end of 1942 about 17% of the freight handled by Cupples Station was less-than-carload freight. Loading and unloading of less-than-carload freight is the duty of the carriers and the expense thereof is included in the line-haul charge.

Appellant contends that it is not an employer liable for the payment of the tax under the Carriers' Taxing Act of 1937, 45 U.S.C.A. §§ 261–273, and of Subchapter B of Chapter 9 of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, §§ 1500–1537, because (1) it is not an express company, sleeping-car company or carrier by railroad, subject to Part I of the Interstate Commerce Act; or (2) it is not a company which is owned or controlled by or under common control with one or more such carriers, or operates some equipment or facility, or performs some service in connection with railroad transportation as defined in section 1(1)(a) of the Interstate Commerce Act.

The term "employer" is defined in subsection (a) of Section 1532 Title 26 U.S. C.A.Int.Rev.Code as: " * * * any carrier (as defined in subsection (h) of this section), and any company which is directly or indirectly owned or controlled by one or more such carriers or under common control therewith, and which operates any equipment or facility or performs any service (except trucking service, casual service, and the casual operation of equipment or facilities) in connection with the transportation of passengers or property by railroad, or the receipt, delivery, elevation, transfer in transit, refrigeration or icing, storage, or handling of property transported by railroad, and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the property or operating all or any part of the business of any such employer."

Subsection (h) referred to in Section 1532 contains the following language: "The term 'carrier' means any express company, sleeping-car company, or carrier by railroad, subject to part I of the Interstate Commerce Act."

Section 1(3) (a) Title 49 U.S.C.A. defines the term "railroad" as follows: "(3) (a) The term 'common carrier' as used in this chapter shall include all pipe-line companies; express companies; sleeping-car companies; and all persons, natural or artificial, engaged in such transportation as aforesaid as common carriers for hire. Wherever the word 'carrier' is used in this chapter it shall be held to mean 'common carrier.' The term 'railroad' as used in this chapter shall include all bridges, car floats, lighters, and ferries used by or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement, or lease, and also all *switches, spurs, tracks, terminals, and terminal facilities of every kind* used or necessary in the transportation of the persons or property designated herein, including *all freight depots,* yards, and grounds, used or necessary in the transportation or delivery of any such property. The term 'transportation' as used in this chapter shall include locomotives, cars, and other vehicles, vessels, and all instrumentalities and facilities of shipment or carriage, irrespective of ownership or of any contract, express or implied, for the use thereof, and all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported. The term 'person' as used in this chapter includes an individual, firm, copartnership, corporation, company, association, or joint-stock association; and includes a trustee, receiver, assignee, or personal representative thereof." (Emphasis supplied.)

It may be conceded that Cupples Station is not owned by a railroad company, nor, under the terms of the contract, is it under the control of any carrier.

The term "common carrier" as used in Section 1 (3) (a) of the Interstate Commerce Act defines the term "railroad" which is a part of the term "common carrier," as used in that chapter as including—" * * * all switches, spurs, tracks, terminals, and terminal facilities of every kind used or necessary in the trans-portation of the persons or property designated herein, including all freight depots, yards, and grounds, used or necessary in the transportation or delivery of any such property. * * *"

Under the terms of the contract and the evidence in this case, the service being performed by Cupples Station for the twenty railroads operating in the St. Louis area as described, is a necessary service in connection with the transportation of property by the carriers, and instead of performing that service itself, or through the Terminal Railroad Association facilities, as was done prior to 1935, by contract they have provided for the performance of those services by the appellant herein.

Appellant also insists that because the less-than-carload freight handled by Cupples Station is almost exclusively for the tenants of Cupples Block, that it is not a public station, and therefore, not an employer within the meaning of the Act. It is admitted that the loading and unloading of freight in less-than-carload lots is a duty of the carrier, and a service which is included in its line-haul charges, and it is this service that is being rendered by the Cupples Station to the various carriers operating in that area, and for which it receives from such carriers .605¢ per ton. It owns all the tracks leading from the Terminal Railroad, over which the cars containing the freight are transported from the Terminal facilities, to the docks of the station. The station owns no locomotives and has nothing to do with the movement of the cars.

A reading of the contract entered into by the appellant and the Terminal Railroad Association clearly indicates that it is a public station. Unquestionably during its operation by the Terminal Railroad Association, from the time of its construction in 1890 until it was taken over by the appellant in 1935, it was a public freight station. The contract specifically provides that the University will furnish and maintain, for the benefit of the carriers, all of the equipment and facilities of the character *now used* at the station, and also perform such functions and clerical services as are usual and customary in a

railroad freight station for the handling of less-than-carload freight. Apparently under that agreement no change whatsoever in the public character of the station was contemplated, and the evidence fails to show that any change was made.

The conclusion cannot be escaped that the Station, under the terms of the contract, is a public station, and the fact that its services are to a very large degree limited to the occupants of Cupples Block, does not change its public character. The tenants of Cupples Block are a part of the general public. The fact that only 15 to 20% of the total amount of freight handled at the station is less-than-carload shipments, cannot change the public character of the appellant as an employer, if it otherwise falls within the provisions of the statute. The services it is rendering are railroad transportation services which it is required to render as a part of the line-haul charge, and performed at a railroad terminal as a common or public calling by one who, in rendering it, is engaged in the transportation of property by railroad, and it is an employer within the meaning of the Act. Union Stock Yards & Transit Co. v. United States, 308 U.S. 213, 60 S.Ct. 193, 84 L.Ed. 198; United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 63 L.Ed 613, 6 A.L.R. 527.

The judgment is affirmed.